UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

SEBASTIAN PATRICK WILLIAMS,

                Plaintiff,

v.

MICHAEL BURGESS et al.,

                Defendants.

_____/

Case No. 1:25-cv-825

Hon. Hala Y. Jarbou

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. The Court will also grant Plaintiff's motion to supplement his complaint under Federal Rule of Civil Procedure 15(d) (ECF No. 4).

Under the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Burgess, Clouse, Johnson, LeGalley, Oppenheimer, and Merretti. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendant Pelky: official capacity claims; claims related to Plaintiff's grievances, including due process claims and

claims for violation of Plaintiff's right to petition the government; Fourteenth Amendment due process claims regarding the confiscation of Plaintiff's property and the Class II misconduct charge; and claims of conspiracy. Plaintiff's First Amendment retaliation claims against Defendant Pelky remain in the case.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Gus Harrison Correctional Facility (ARF) in Adrian, Lenawee County, Michigan. The events about which he complains, however, occurred at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. Plaintiff sues the following ECF staff in their official and individual capacities: Warden Michael Burgess, Deputy Warden Jason Clouse, Resident Unit Manager Unknown Pelky, Lieutenant Unknown Johnson, Sergeant Unknown LeGalley, Sergeant Unknown Oppenheimer, and Correctional Officer Unknown Merretti. (Compl., ECF No. 1, PageID.2–3.)

Plaintiff alleges that he previously filed a lawsuit against ECF "Administration," which was dismissed in part on June 2, 2025. (*Id.*, PageID.3–4.) On June 8, 2025, Defendant Merretti confiscated Plaintiff's JP6 Player/Tablet ("JP6 Player") because he saw additional wires attached to the motherboard of the player and knew that it had been altered. (*Id.*, PageID.4.) Plaintiff argued with Defendant Merretti about whether the JP6 Player had been altered and the sufficiency of Defendant Merretti's training to spot altered players. (*Id.*) Defendant Merretti stated, "You need not wrong about it, you will be receiving a misconduct shortly." (*Id.*)

That evening, Defendant Oppenheimer reviewed Plaintiff on a Class II misconduct charge for destruction or misuse of property issued by Defendant Merretti. (*Id.*, PageID.4–5.) Plaintiff again argued with Defendant Oppenheimer regarding officer training on spotting altered players. (*Id.*) Plaintiff also requested a copy of Defendant Merretti's body camera footage, and the evidence

2

attached to the misconduct report. (*Id.*) Defendant Oppenheimer explained how Plaintiff can request the body camera footage and told Plaintiff that the evidence would be available at Plaintiff's hearing. (*Id.*) That evening, Plaintiff "gave Staff" a request for Defendant Merretti's body camera footage. (*Id.*)

On June 9, 2025, Plaintiff expressed his "concerns" to non-party property room staff who, in turn, volunteered to examine Plaintiff's JP6 Player for tampering and additional wires, but were unable to locate Plaintiff's property. (*Id.*) On June 11, 2025, Plaintiff filed a grievance regarding his missing personal property. (*Id.*, PageID.6.)

On June 13, 2025, Defendant Johnson conducted a hearing on Plaintiff's Class II misconduct charge. (*Id.*) He explained that he would determine whether the JP6 Player was altered and would need to first examine the JP6 Player. (*Id.*) Defendant Johnson postponed the hearing until he was able to examine the JP6 Player. (*Id.*, PageID.7.)

On June 17, 2025, Plaintiff asked Defendant Burgess whether ECF staff was trained on spotting an altered JP6 Player. (*Id.*) Defendant Burgess told Plaintiff that they were. (*Id.*) He also explained that it was not staff members who make the determination whether the player is altered, but a JPay technician. (*Id.*)

On June 20, 2025, Plaintiff received a response from Defendant LeGalley denying Plaintiff's grievance and explaining that there was "[n]o violation of PD 04.07.117," which Plaintiff states is not an existing MDOC Policy Directive. (*Id.*) Defendant LeGalley further noted that he spoke with Defendant Pelky who provided him with a report from a JPay Technician that showed that the operating system on Plaintiff's JP6 Player had been altered and contained "audio porn." (*Id.*, PageID.8.) Plaintiff was not provided with the JPay Technician's report or the body camera footage that he had requested. (*Id.*)

On June 23, 2025, Plaintiff spoke with Defendant Clouse regarding his JP6 Player because Defendant Clouse handles misconduct appeals. (*Id.*) Defendant Clouse told Plaintiff, "I would [sic] look into it." (*Id.*) Plaintiff appealed the denial of his grievance to Defendant Burgess. (*Id.*, PageID.9.)

On June 27, 2025, Plaintiff again spoke with Defendant Clouse regarding his JP6 Player. (*Id.*) Defendant Clouse asked Plaintiff if he had received paperwork and told Plaintiff, "I'm going to fine [sic] you someplace else to be." (*Id.*)

Plaintiff approached Defendant Burgess on July 2, 2025, to again ask about his JP6 Player. (*Id.*) Defendant Burgess told Plaintiff that he would look into it. (*Id.*) When Plaintiff told Defendant Burgess that the JP6 Player was in Defendant Pelky's office, Defendant Burgess told Plaintiff to ask Defendant Pelky about it. (*Id.*) However, when Plaintiff spoke with Defendant Pelky, Defendant Pelky stated, "[Y]ou shouldn't implicate people in your lawsuits." (*Id.*)

Plaintiff asked Defendant Burgess about his JP6 Player again on July 11, 2025. (*Id.*) Defendant Burgess told Plaintiff that he would not be getting the JP6 Player back because it contained "audio porn." (*Id.*)

In his motion to supplement his complaint, Plaintiff describes that, on July 14, 2025, Defendant Johnson found Plaintiff guilty of the class II misconduct charge of destruction or misuse of property based upon the report by the JPay Technician that concluded that Plaintiff's JP6 Player contained audio porn. (Mot. to Suppl., ECF No. 4, PageID.78–79; ECF No. 4-2, PageID.86.) Plaintiff received ten days' loss of privileges. (*Id.*) On appeal, Defendant Burgess upheld Defendant Johnson's guilty finding. (Mot. to Suppl., ECF No. 4, PageID.79.)

On July 18, 2025, Plaintiff notified Defendants Burgess, Clouse, Pelky, and Johnson and "Property Room Staff" that he was electing to send his JP6 Player home at his expense. (*Id.*,

PageID.80.) However, the Property Room Staff informed Plaintiff that they did not have his JP6 Player and asked Plaintiff if he knew where it was. (*Id.*) After some correspondence regarding the whereabouts of Plaintiff's JP6 Player, Plaintiff was informed that Defendant Pelky would not allow Plaintiff to send his JP6 Player home as had been originally offered in connection with the disposition of Plaintiff's misconduct charge. (*Id.*) Plaintiff informed Defendant Pelky that he wanted to have the JP6 Player sent home as offered by Defendant Johnson and referred to an MDOC Policy Directive that allows prisoners to send personal property home. (*Id.*, PageID.80–81.) Defendant Pelky stated, "[Y]ou can thank Oaks for that little caveat, and let's not talk about bogus complaints, since you like to file them." (*Id.*, PageID.81.) Plaintiff responded to Defendant Pelky, "[D]o whatever you want to do, but be sure I receive the paperwork." (*Id.*) A few hours later, Plaintiff was transferred to a new facility. (*Id.*)

As a result of the events described in Plaintiff's complaint, Plaintiff brings claims for violation of his First and Fourteenth Amendment rights. (Compl., ECF No. 1, PageID.11.) He mentions retaliation, violation of his right to due process, and violation of his right to petition the courts. (*Id.*) He also claims that Defendants "acted in concert with one another to deprive Plaintiff of ownership of his personal property." (*Id.*, PageID.12.) Plaintiff seeks declaratory, injunctive, and monetary relief. (*Id.*, PageID.13.)

## II.    Motion to Supplement the Complaint

On August 6, 2025, Plaintiff filed a motion to supplement his complaint pursuant to Federal Rule of Civil Procedure 15(d). (ECF No. 4.) Federal Rule of Procedure 15(d) provides:

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time

Fed. R. Civ. P. 15.

The standard for granting leave to supplement under Rule 15(d) is identical to the standard governing leave to amend under Rule 15(a). *See Spies v. Voinochi*, 48 F. App'x 520, 527 (6th Cir. 2002) (citing *Glatt v. Chicago Park Dist.*, 87 F.3d 190, 194 (7th Cir. 1996)). Rule 15(a) provides that "leave [to amend] shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). Accordingly, leave to supplement should be freely given as well. In assessing whether to grant a motion for leave to amend or supplement a pleading, a district court may consider such factors as (1) undue delay in filing the motion; (2) lack of notice to adverse parties; (3) whether the movant is acting in bad faith, or with a dilatory motive; (4) failure to cure deficiencies by previous amendments; (5) the possibility of undue prejudice to adverse parties; and (6) whether the amendment is futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Robinson v. Mich. Consol. Gas. Co.*, 918 F.2d 579, 591 (6th Cir. 1990).

Upon considering the foregoing factors, the Court will grant Plaintiff's motion for leave to supplement his complaint (ECF No. 4) and will consider the factual allegations set forth in its review of Plaintiff's complaint under the PLRA.

## III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Official Capacity Claims

Plaintiff sues Defendants in their official and individual capacities. (Compl., ECF No. 1, PageID.3.) A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity, or Congress has expressly abrogated Eleventh Amendment immunity

7

by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison*, 722 F.3d at 771.

Here, Plaintiff seeks monetary damages. However, the MDOC is not a "person" who may be sued under § 1983 for money damages. Similarly, Plaintiff may not seek monetary damages against Defendants in their respective official capacities. *Will*, 491 U.S. at 71 ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."). Therefore, Plaintiff fails to state a claim against Defendants in their official capacities for monetary damages upon which relief can be granted.

In addition to his request for damages, Plaintiff requests declaratory and monetary relief. (Compl., ECF No. 1, PageID.12.) Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity known as the *Ex parte Young* doctrine. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (citing *Ex parte Young*, 209 U.S. 123, 159–60 (1908)). The *Ex parte Young* doctrine "rests on the premise—less delicately called a 'fiction'—that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign immunity purposes." *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011) (citation omitted). Nonetheless, the Supreme Court has cautioned that

"*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Plaintiff's request for declaratory relief is retrospective, and addresses only past violations, on its face. Plaintiff seeks a "declaration that the acts and omissions described herein violated Plaintiff's rights under the Constitution and laws of the United States." (Compl., ECF No. 1, PageID.13.) Plaintiff request for injunctive relief, on the other hand, is prospective in that Plaintiff asks the Court to enjoin Defendant Burgess from "using unconstitutional practices under fraudulent[] actualizations, and false pretense as means to confiscate prisoners['] personal property, and honor prisoners['] rights to due process." (*Id.*) But Plaintiff's complaint does not identify an "ongoing violation of federal law." *Ladd*, 971 F.3d at 581. Accordingly, Plaintiff may not use the *Ex parte Young* doctrine to pursue his claims for declaratory and injunctive relief against Defendants in their respective official capacities.

Moreover, the Sixth Circuit has held that transfer to another correctional facility moots a prisoner's injunctive and declaratory claims. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive and declaratory relief became moot when the prisoner was transferred from the prison about which he complained); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Here, Plaintiff is no longer confined at ECF, which is where he avers that Defendants are employed. Because Plaintiff's requests for relief fail to satisfy the *Ex parte Young* doctrine's exception and because

Plaintiff is no longer at ECF, he cannot maintain his claims for injunctive or declaratory relief against Defendants in their official capacities.

For all the reasons set forth above, Plaintiff has failed to state a claim against Defendants in their official capacities upon which relief can be granted. Accordingly, Plaintiff's official capacity claims against Defendants will be dismissed.

### B.    Claims Related to the Handling of Plaintiff's Grievances and Complaints

Plaintiff alleges that Defendants violated his right to due process and his right to petition the courts for redress of his grievances. (Compl., ECF No. 1, PageID.11.) The Court will construe Plaintiff's complaint to bring First and Fourteenth Amendment claims against Defendants premised upon their handling of Plaintiff's grievances and complaints.

First, various courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Moreover, Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Thus, because Plaintiff has no liberty interest in the grievance process, any interference with the grievance process or inadequate responses to Plaintiff's grievances did not deprive Plaintiff of due process.

Second, Plaintiff's right to petition the government was not violated by the denial of or the failure to act upon his grievances. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or

adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Likewise, any inaction or action by Defendants did not bar Plaintiff from seeking a remedy for his grievances or complaints. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances. *Cf. Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that if a prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required).

Ultimately, the Sixth Circuit has made clear: § 1983 liability may not be imposed simply because an official denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Therefore, for all the foregoing reasons, Plaintiff has failed to state a cognizable claim pursuant to § 1983 related to the handling of Plaintiff's grievances and complaints.

## C.    First Amendment Retaliation Claims

Plaintiff cites an MDOC Policy Directive for the proposition that "staff are prohibited from retaliating against a prisoner who files a complaint." (Compl., ECF No. 1, PageID.11.) However, claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of state law or MDOC policy. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).

Nonetheless, it is also true that retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

With respect to the first factor, Plaintiff points to a lawsuit against ECF "Administration," which was dismissed in part on June 2, 2025, verbal complaints to Defendants Merretti, Oppenheimer, Burgess and Clouse, and a written grievance dated June 11, 2025. It is well established that an inmate has a right to submit "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018). Therefore, the Court finds that Plaintiff has adequately alleged that he engaged in protected conduct. The Court will address Plaintiff's retaliation claims against each of the named Defendants in turn.

### 1.      Defendant Burgess

Plaintiff alleges that Defendant Burgess told Plaintiff that ECF staff were trained in spotting altered JP6 Players (Compl., ECF No. 1, PageID.7), told Plaintiff to speak with Defendant Pelky regarding his JP6 Player (*id.*), presumably denied Plaintiff's grievance appeal (*see id.*, PageID.9), and told Plaintiff that he would not be getting his JP6 Player back because it contained audio porn (*id.*). Certainly, Defendant Burgess' mere discussions with Plaintiff were not adverse actions for purposes of a claim for First Amendment retaliation. Moreover, if denying a grievance

12

was considered adverse action, every denial would give rise to liability for retaliation under the First Amendment. The Sixth Circuit, however, has clearly held that the denial of grievances does not give rise to liability under § 1983. *See Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008).

Many courts, including this one, have held that the denial or refusal to process a grievance is not adverse action. *See, e.g.*, *Cameron v. Gurnoe*, No. 2:19-cv-71, 2019 WL 2281333, at *4–5 (W.D. Mich. May 29, 2019) (citing cases); *Branch v. Houtz*, No. 1:16-cv-77, 2016 WL 737779, at *6 (W.D. Mich. Feb. 25, 2016); *Ross v. Westchester Cnty. Jail*, No. 10 Civ. 3937, 2012 WL 86467, at *8 (S.D.N.Y. Jan. 11, 2012) (discussing that the refusal to file a grievance is, without more, not adverse action); *Stone v. Curtin*, No. 1:11-cv-820, 2011 WL 3879505, at *4 (W.D. Mich. Aug. 31, 2011) (concluding that the failure to process a prison grievance would not deter a prisoner of ordinary firmness from exercising his right to file a grievance); *Green v. Caruso*, No. 1:10-cv-958, 2011 WL 1113392, at *10 (W.D. Mich. Mar. 24, 2011) (finding that the denial of a prisoner's grievances was not sufficiently adverse to support a retaliation claim); *Burgos v. Canino*, 641 F. Supp. 2d 443, 454 (E.D. Pa. 2009), *aff'd*, 358 F. App'x 302 (3d Cir. 2009) (discussing that the rejection or denial of prison grievances does not constitute an adverse action for purposes of a retaliation claim). Therefore, Plaintiff cannot maintain a claim for retaliation based upon Defendant Burgess' denial of Plaintiff's grievance appeal.

The only action which may be considered adverse is Defendant Burgess' confirmation that Plaintiff's JP6 Player would not be returned. However, the Court need not decide that issue as Plaintiff's complaint does not contain any facts that would suggest that Defendant Burgess' decision was the result of retaliation.

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005);

*Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). However, "alleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579–80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive).

Nothing within Plaintiff's complaint plausibly suggests that Defendant Burgess confirmed that Plaintiff's JP6 Player would not be returned because of Plaintiff's prior lawsuit or complaints. Accordingly, the Court will dismiss Plaintiff's First Amendment retaliation claim against Defendant Burgess.

### 2.    Defendant Clouse

Plaintiff alleges that Defendant Clouse told Plaintiff that he would look into Plaintiff's misconduct charge, (Compl., ECF No. 1, PageID.8), and, in response to Plaintiff's questions about his JP6 Player, told Plaintiff, "I'm going to fine [sic] you someplace else to be." (*Id.*, PageID.9.) Plaintiff does not allege that Defendant Clouse ever took any action against Plaintiff. Therefore, Plaintiff's allegations fail to plausibly suggest any adverse action by Defendant Clouse sufficient to deter a person of ordinary firmness from engaging in First Amendment protected activity. Plaintiff's retaliation claim against Defendant Clouse will be dismissed.

### 3.    Defendant Pelky

Plaintiff alleges that Defendant Pelky held Plaintiff's JP6 Player in his office and first reported to Defendant LeGalley that a JPay Technician found that Plaintiff's JP6 Player contained

audio porn. (Compl., ECF No. 1, PageID.7.) When Plaintiff asked Defendant Pelky about the JP6 Player, Defendant Pelky told Plaintiff, "[Y]ou shouldn't implicate people in your lawsuits." (*Id.*, PageID.9.) Plaintiff also describes that he attempted to send his JP6 Player home after Plaintiff was found guilty of the class II misconduct charge, but that Defendant Pelky refused to allow Plaintiff to exercise that option, also referencing Plaintiff's propensity for filing complaints. (Mot. to Suppl., ECF No. 4, PageID.81.)

Plaintiff alleges that Defendant Pelky did not return Plaintiff's JP6 Player and refused to allow Plaintiff to send the JP6 Player home. Plaintiff's references to Defendant Pelky's comment regarding Plaintiff's lawsuits while discussing Plaintiff's property at least supports an inference that Defendant Pelky acted in retaliation for Plaintiff's earlier lawsuit and/or grievances. Taking Plaintiff's allegations as true and drawing all reasonable inferences in his favor, the Court will not dismiss Plaintiff's First Amendment retaliation claim against Defendant Pelky on screening.

### 4.    Defendant Johnson

Plaintiff first alleges that Defendant Johnson conducted the hearing on Plaintiff's Class II misconduct charge, postponing the hearing until he was able to examine the JP6 Player. (*Id.*, PageID.6–7.) Plaintiff does not allege that Defendant Johnson was aware of Plaintiff's earlier protected activity, nor do the actions that Plaintiff attributes to Defendant Johnson rise to the level of adverse actions. Indeed, it was Plaintiff who suggested that Defendant Johnson could not make a determination on the Class II misconduct without first examining the JP6 Player itself. (*Id.*)

In his supplemental allegations, Plaintiff alleges that Defendant Johnson found Plaintiff guilty of the misconduct charge based upon the report of the JPay Technician that Plaintiff's JP6 Player contained audio porn. (Mot. to Suppl., ECF No. 4, PageID.78–79; ECF No. 4-2, PageID.86.) Plaintiff received ten days' loss of privileges as a result. (*Id.*) Though these actions may be considered sufficiently adverse for purposes of a claim of First Amendment retaliation,

15

Plaintiff's complaint does not contain any factual allegations that would plausibly suggest that Defendant Johnson's finding was motivated by retaliatory animus.[1]

"[B]ecause prisoner retaliation claims are easily fabricated, and accordingly pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration, we are careful to require non-conclusory allegations." *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (cleaned up). Here, however, Plaintiff alleges nothing more than a conclusory allegation of retaliation against Defendant Johnson. Indeed, there is nothing within the complaint to indicate that Defendant Johnson was even aware of Plaintiff's protected activity at the time that he issued his finding. Accordingly, Plaintiff's First Amendment retaliation claim against Defendant Johnson will be dismissed.

### 5.    Defendant LeGalley

Plaintiff claims that Defendant LeGalley denied Plaintiff's grievance, explaining that he was provided with a report which showed that Plaintiff's JP6 Player contained audio porn. (*Id.*, PageID.7.) As discussed above, the denial of an administrative grievance is not an adverse action. Plaintiff also fails to provide the Court with any factual allegations that would plausibly suggest that Defendant LeGalley was aware of Plaintiff's other First Amendment protected activity or that his denial of Plaintiff's grievance was motivated by anything other than the report that he had been shown. Accordingly, Plaintiff's retaliation claim against Defendant LeGalley will be dismissed.

---

[1] Indeed, Plaintiff never states that his player did not contain audio porn; instead, he claims that he legally purchased the material on the player. (Compl., ECF No. 1, PageID.10.) Similarly, Plaintiff never alleges that there were not additional wires, as reported by Defendant Merretti, or that the operating system was not altered, as reported by the JPay technician. Instead, Plaintiff suggests that the Defendants are not sufficiently schooled in the technology to recognize alterations or modifications.

### 6.     Defendant Oppenheimer

Plaintiff explains that, on the evening of June 8, 2025, Defendant Oppenheimer reviewed Plaintiff on the Class II misconduct charge, explained to Plaintiff how he could request body camera footage, and discussed the availability of evidence for Plaintiff's hearing. (*Id.*, PageID.4–5.) The Court is unable to discern any hint of negative action or a retaliatory motive in Plaintiff's allegations regarding the actions of Defendant Oppenheimer, let alone how Defendant Oppenheimer's actions would deter a person of ordinary firmness from engaging in protected activity. Accordingly, the Court will dismiss Plaintiff's retaliation claim against Defendant Oppenheimer.

### 7.     Defendant Merretti

Finally, Plaintiff alleges that Defendant Merretti initially confiscated Plaintiff's JP6 Player and issued Plaintiff a Class II misconduct. (*Id.*, PageID.4.) Though these actions followed the partial dismissal of Plaintiff's lawsuit against ECF Administration, there is nothing to indicate that Defendant Merretti was personally aware of that lawsuit or that his actions were motivated by any protected activity.[2]

It appears that Plaintiff attempts to rely upon temporal proximity to create an inference of retaliation, alleging that Defendant Merretti confiscated Plaintiff's JP6 Player and issued Plaintiff a Class II misconduct charge only days after the order dismissing the majority of Plaintiff's earlier lawsuit. In some circumstances, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d

---

[2] Defendant Merretti was named as a defendant in Plaintiff's lawsuit against "ECF Administration," but all claims against Defendant Merretti were dismissed before service. *Williams v. Van Dam*, No. 1:25-cv-560, 2025 WL 1552724 (W.D. Mich. June 2, 2025).

408, 422 (6th Cir. 2004)). However, as discussed above "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner*, 89 F. App'x at 579-80.

Here, Plaintiff's complaint contains only conclusory allegations of retaliation against Defendant Merretti, insufficient to create any inference of retaliation. Accordingly, the Court will dismiss Plaintiff's retaliation claim against Defendant Merretti.

### D.   Fourteenth Amendment Due Process Claims Regarding Confiscation of Plaintiff's JP6 Player

Plaintiff brings Fourteenth Amendment claims and alleges that he has been deprived of his JP6 Player/Tablet. However, any due process claims regarding the deprivation of his property are barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).

Under *Parratt*, an individual deprived of property by a "random and unauthorized act" of a state employee cannot maintain a federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, while real, is not "without due process of law." *Id.* at 537. This doctrine applies to both negligent and intentional deprivations of property, as long as the deprivation was not pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Plaintiff must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). The Sixth Circuit has noted that a prisoner's failure to sustain this burden requires dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Here, Plaintiff fails to allege that his state post-deprivation remedies are inadequate. And Plaintiff has available to him numerous state post-deprivation remedies. The Sixth Circuit has specifically held that the remedies Michigan makes available after a property deprivation are

18

constitutionally adequate. *See Copeland*, 57 F.3d at 480. Plaintiff fails to allege any reasons why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his property. Accordingly, Plaintiff fails to state a Fourteenth Amendment due process claim regarding the deprivation of his JP6 Player.

### E.    Fourteenth Amendment Due Process Claims Regarding Class II Misconduct

Plaintiff also alleges that Defendant Merretti issued Plaintiff a false Class II misconduct charge for destruction or misuse of property, that Plaintiff was denied evidence in connection with the charge, and that he was improperly found guilty. The Court will construe these allegations as raising a claim for violation of Plaintiff's Fourteenth Amendment right to due process.

The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). A prisoner's ability to challenge a prison misconduct conviction therefore depends on whether the conviction implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and

significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. at 484, 487.

Plaintiff's misconduct charge and conviction could have affected a number of Plaintiff's interests, but none of them fall into either of the categories identified in *Sandin* as protected by due process, i.e., an inevitable effect on the duration of Plaintiff's sentence or an atypical and significant hardship. As to the first category, Plaintiff has not alleged a deprivation that will inevitably affect the duration of his sentence. Plaintiff is serving, among other sentences, a sentence of life imprisonment without parole for first-degree murder. MDOC Offender Tracking Information System, https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=214991 (last visited Sep. 3, 2025). Even if the MDOC rewarded prisoners for serving time "misconduct free," those rewards are not available to prisoners serving life sentences without parole.

As to the second category, Plaintiff has not alleged that he suffered a "significant and atypical deprivation." According to the misconduct hearing report, Plaintiff received fifteen days loss of privileges as a result of the misconduct conviction. (ECF No. 4-2, PageID.86.) In *Sandin*, the Supreme Court concluded that placement in disciplinary segregation for thirty days did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (61 days in segregation is not atypical and significant). It has also held, in specific circumstances, that confinement in segregation for a much longer period of time does not implicate a liberty interest. *See, e.g.*, *Jones*, 155 F.3d at 812–13 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a

117-day delay in reclassification due to prison crowding). Generally, only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, i.e., three years without an explanation from prison officials, implicates a liberty interest).

Where a stay longer than 30 days in segregation is not considered an atypical or significant hardship, *see Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010), it defies logic to suggest that the lesser penalty of loss of privileges for 15 days could be atypical or significant. Sixth Circuit authority bears that out. *See Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004) (holding that a fourteen-day loss of privileges sanction did not implicate the due process clause); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (nine-month loss of package privileges did not impose an atypical and significant hardship); *Alexander v. Vittitow*, No. 17-1075, 2017 WL 7050641, at *3 (6th Cir. Nov. 9, 2017) (concluding that "thirty days' loss of privileges . . . did not implicate a protected liberty interest"); *Langford v. Koskela*, No. 16-1435, 2017 WL 6803554, at *3 (6th Cir. Jan. 24, 2017) (holding that thirty days' toplock and thirty days' loss of privileges "does not amount to an 'atypical and significant hardship'").

Therefore, for the foregoing reasons, Plaintiff's due process claim related to his misconduct charge and conviction is properly dismissed for failure to state a claim.

## F.    Conspiracy Claims

Plaintiff claims that Defendants "acted in concert with one another to deprive Plaintiff of ownership of his personal property." (Compl., ECF No. 1, PageID.12.) The Court has construed this allegation to raise a claim of civil conspiracy.

21

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Here, Plaintiff does not specifically allege that any "agreement" or "plan" existed between Defendants in confiscating Plaintiff's JP6 Player. Instead, Plaintiff's allegations of conspiracy are wholly conclusory. Plaintiff appears to rely entirely on an attenuated inference of a conspiracy from the fact that multiple Defendants confirmed that Plaintiff could not possess the JP6 Player for various reasons. As the United States Supreme Court has held, such allegations, even if hinting at a sheer "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556–57. Instead, the Supreme Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567).

Accordingly, because Plaintiff does not allege facts to show an agreement among Defendants, Plaintiff fails to state a plausible § 1983 civil conspiracy claim.

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis* and will grant Plaintiff's motion to supplement his complaint under Federal Rule of Civil Procedure 15(d) (ECF No. 4).

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Burgess, Clouse, Johnson, LeGalley, Oppenheimer, and Merretti will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendant Pelky: official capacity claims; claims related to Plaintiff's grievances, including due process claims and claims for violation of Plaintiff's right to petition the government; Fourteenth Amendment due process claims regarding the confiscation of Plaintiff's property and the Class II misconduct charge; and claims of conspiracy. Plaintiff's First Amendment retaliation claims against Defendant Pelky remain in the case.

An order consistent with this opinion will be entered.


Dated: September 10, 2025                    /s/ Hala Y. Jarbou
                                             HALA Y. JARBOU
                                             CHIEF UNITED STATES DISTRICT JUDGE